IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:10-CR-21-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ROBERT LEON LECRAFT, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the motion of defendant Robert Leon LeCraft to suppress evidence seized and statements given subsequent to a police stop and search of a vehicle driven by defendant (DE #32). The government timely filed a response in opposition to defendant's motion. Pursuant to 28 U.S.C. § 636(b)(1)(C), the matter was referred to United States Magistrate Judge David W. Daniel for issuance of a memorandum and recommendation ("M&R"). No objections to the M&R were filed within the time permitted for so doing. The issues raised are therefore ripe for review. For the reasons that follow, the court adopts the M&R in full, and denies defendant's motion to suppress.

**STATEMENT OF THE CASE**

On March 24, 2010, a grand jury returned a two-count indictment against defendant, charging him with (1) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924; and (2) possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924. Defendant's arraignment is currently set for March 14, 2011.

On August 25, 2010, defendant moved to suppress all evidence seized and statements given based on the assertions that no valid consent to search was obtained and no *Miranda* warnings were given. The government responded in opposition on September 2, 2010, arguing that valid consent to search was in fact obtained and that no *Miranda* warnings were necessary under the circumstances. The matter was referred to the magistrate judge, who conducted an evidentiary hearing on September 20, 2010, to further develop the record. Defendant, with counsel, was present at the hearing. On October 7, 2010, the magistrate judge issued his M&R, recommending to the court that defendant's motion to suppress be denied. No objections to the M&R were filed.

## STATEMENT OF THE FACTS

Upon review of the record, the court adopts the magistrate judge's findings of fact, benefitted by evidentiary hearing, as outlined in the M&R. For clarity of the discussion to follow, the court briefly summarizes the relevant facts as found by the magistrate judge.

The charges against defendant arose out of a traffic stop and search and related interrogation conducted by law enforcement officers with the New Bern Police Department ("NBPD") that took place on August 7, 2009. Detective Marquie Morrison-Brown ("Detective Morrison-Brown"), Sergeant David Daniels ("Sergeant Daniels"), and Sergeant Harold Dombrowsky ("Sergeant Dombrowsky"), all of the NBPD, were the sole witnesses to testify at the evidentiary hearing conducted before the magistrate judge on September 20, 2010. The magistrate judge found the following facts based on their testimony.

A.  Testimony of Detective Morrison-Brown

On August 7, 2009, Detective Morrison-Brown was an officer assigned to the Street Crime Unit of the NBPD. She was on duty on the evening of August 7, 2009, and was driving a white

2

unmarked patrol car. At approximately 8:30 p.m., she observed a Chevy Avalanche run a stop sign while making a left from Grace Street onto East Rose Street in New Bern, North Carolina. After seeing the vehicle run the stop sign, she radioed the license plate number to NBPD Communications. Upon receiving a response, she activated her blue lights and attempted to pull the vehicle over. The driver kept going, making a left onto Williams Street before eventually stopping. Detective Morrison-Brown pulled in behind the vehicle, gave her exact position over the radio, exited her patrol car, and approached the stopped vehicle from the passenger side. As she knocked on the window, she recognized the driver as defendant, whom she was familiar with from a prior convenience store surveillance and gambling charge. Defendant was alone in the vehicle.

Detective Morrison-Brown explained to defendant why she had conducted the traffic stop, and asked him for his driver's license and registration. He told her that he had run the stop sign because he was on his cell phone and not paying attention. Detective Morrison-Brown took his documents back to her patrol car, where she used her computer to pull up defendant's information. At some point, Sergeant Daniels arrived on the scene as backup, which is NBPD standard operating procedure for traffic stops at night in that area of town. Detective Morrison-Brown discussed the traffic stop with Sergeant Daniels, who informed her that he was familiar with defendant from previous drug and/or gun offenses. Detective Morrison-Brown was previously unaware of that aspect of defendant's criminal history.

Detective Morrison-Brown wrote a warning citation and returned to defendant's vehicle to present him with the citation. She explained that she was only issuing a warning, and defendant appeared pleased. Detective Morrison-Brown characterized her interaction with defendant up to this point as pleasant and friendly. After giving defendant the citation along with his license and

3

registration, Detective Morrison-Brown asked defendant if he would mind if she searched for contraband. The request for consent to search occurred approximately three to five minutes after the stop was originally initiated. In response to the request to search, defendant said "go ahead," so Detective Morrison-Brown asked defendant to step out of the car and proceed to the rear of his vehicle. He did as she asked, but after reaching the rear of his vehicle, defendant continued walking to the passenger side of Detective Morrison-Brown's parked patrol car.

At that time, Detective Morrison-Brown informed defendant that she was going to frisk him for officer safety, and asked defendant if he had anything on him. Defendant responded, "I've got a gun." Sergeant Daniels then grabbed defendant's hand and retrieved a firearm from his pocket. Detective Morrison-Brown then handcuffed defendant and placed him under arrest. A further search of defendant's person revealed a magazine and additional rounds, which were seized. A search of defendant's vehicle revealed nothing relevant to the instant charges. Sergeant Daniels placed defendant in his patrol car and transported him to the NBPD station. Detective Morrison-Brown remained behind, and had no further involvement with defendant.

B.  Testimony of Sergeant Daniels

On August 7, 2009, Sergeant Daniels was a supervisor in the Street Crimes Unit, and Detective Morrison-Brown was one of his supervisees. Sergeant Daniels was also on duty on the evening of August 7, 2009, and responded to the scene of defendant's traffic stop in order to offer backup assistance. When he arrived, he recognized the stopped vehicle as belonging to defendant, with whom he was familiar from prior law enforcement encounters and his general knowledge of residents in the community. Sergeant Daniels walked up to Detective Morrison-Brown's patrol car

and spoke to her briefly; they discussed defendant's criminal history and Detective Morrison-Brown informed him that she was going to issue a warning citation and ask for consent to search.

Sergeant Daniels stood between the two vehicles and watched as Detective Morrison-Brown approached defendant's vehicle with the warning citation and had a brief conversation. Sergeant Daniels then saw defendant step out of his vehicle and walk towards Detective Morrison-Brown's stopped patrol car. Sergeant Daniels noticed that defendant was walking with a hastened gait, and therefore moved to keep a view of defendant and advised Detective Morrison-Brown to follow him. He heard defendant state that he had a firearm, so Sergeant Daniels reached into defendant's pocket to secure it. He took the weapon into custody along with an additional magazine that fit the firearm, before defendant was placed under arrest. Sergeant Daniels then transported defendant to the NBPD station. They engaged in conversation, but Sergeant Daniels did not question defendant, therefore, no *Miranda* warnings were given.

Upon arriving at the station, Sergeant Daniels explained Project Safe Neighborhoods, a federal firearms initiative, to defendant. Defendant said that he had information that might be helpful, but that he wanted to speak to Sergeant Dombrowsky, another law enforcement officer with whom he had a prior relationship. Sergeant Daniels arranged for Sergeant Dombrowsky to come talk to defendant, and then watched the conversation between them from an observation area in a side office with monitoring screens.

C.  Testimony of Sergeant Dombrowsky

Sergeant Dombrowsky, an officer with the NBPD for over twenty years, is a supervisor in the Major Case Unit. He was not on duty on the evening of August 7, 2009. At approximately 9:00 p.m., he received a call from Sergeant Daniels at the station informing him that defendant had been

5

arrested and wished to speak with him. Sergeant Dombrowsky was familiar with defendant, having encountered him periodically throughout almost his entire twenty-year tenure at the NBPD. Defendant had, in the past, provided information to Sergeant Dombrowsky regarding the locations of people and evidence, which had always been reliable and credible. In fact, he had been such a frequent and valued informer that he and Sergeant Dombrowsky had one another's cell phone numbers. Out of respect for defendant's prior assistance, Sergeant Dombrowsky dressed in plain clothes and went to the station, despite the fact that he was not formally on duty.

Upon arriving to the station, Sergeant Dombrowsky entered the interview room where defendant was waiting. Defendant stated that he was "looking for some assistance," which Sergeant Dombrowsky understood to be based on their prior officer-informer relationship. Sergeant Dombrowsky indicated that he would like to discuss a homicide investigation involving defendant's son, about which they had previously had some discussions. As a result, no *Miranda* warnings were given to defendant by Sergeant Dombrowsky.

At some point during their conversation, Sergeant Dombrowsky told defendant that defendant was "getting old and should stop messing around," apparently in reference to that evening's events. Sergeant Dombrowsky testified that he intended this comment as general "friendly advice." In turn, defendant told him that he had "only had the gun for protection because he had been robbed in the past." Sergeant Dombrowsky did not follow up with any questions about defendant's pending charges, and the entire conversation lasted no more than thirty minutes.

6

**DISCUSSION**

A.  Standard of Review

Defendant's motion to suppress is before the court with benefit of the magistrate judge's analysis. Upon a careful review of the M&R, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Because no objections have been filed, the court reviews the magistrate judge's findings and conclusions only for clear error, and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

B.  Analysis

Defendant argues for the suppression of both the physical evidence gathered during the traffic stop and resulting search of his person, as well as the statements he made to Sergeant Dombrowsky at the police station. The magistrate judge recommended that defendant's motion to suppress be denied on both grounds. For the following reasons, the court agrees with the magistrate judge's recommendation, and concludes that defendant's motion to suppress should be denied.

1.  Suppression of physical evidence

Defendant first argues for the suppression of the physical evidence against him, specifically, the firearm, magazine, and ammunition, which were seized from defendant's person following the traffic stop and resulting frisk of defendant. In support of his motion to suppress, defendant contends that the traffic stop was an unlawful seizure in that the stop was prolonged unreasonably and because defendant felt compelled to submit to a search of his vehicle and his person. The defendant's argument is without merit.

7

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. Amend. IV. The temporary detention of an individual during a vehicle stop, no matter how brief, constitutes a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). As a general rule, however, a vehicle stop is reasonable when a law enforcement officer has probable cause to believe that a traffic violation has occurred. Id. During a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004). Any further detention, however, is illegal unless the officer has a reasonable suspicion of other criminal activity or the individual consents to the further detention. Id.

Searches of vehicles conducted without a warrant will be found to be unreasonable unless a valid exception to the warrant requirement is applicable. Schneckcloth v. Bustamonte, 412 U.S. 218, 219 (1973). A search conducted pursuant to valid consent is a well-recognized exception to the warrant requirement. Id. If the validity of the consent is challenged, the court must determine whether the consent was knowing and voluntary based upon the totality of the circumstances, on which issue the government bears the burden of proof. United States v. Mendenhall, 446 U.S. 544, 557 (1980). In considering the totality of the circumstances, it is appropriate to take into account "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct, the number of officers present, and the duration, location, and time of the encounter)." United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). However, the government need not prove that the accused knew he could refuse consent in order to prove voluntariness. Id. Similarly, officers are not

required to inform an individual that he has the right to refuse consent. Ohio v. Robinette, 519 U.S. 33, 39-40 (1996).

It is clear that defendant was seized within the meaning of the Fourth Amendment when Detective Morrison-Brown initiated the traffic stop. Defendant does not contest the legality of the initial stop of his vehicle, as Detective Morrison-Brown observed him run a stop sign and therefore had authority to conduct the traffic stop. Defendant, however, argues that the traffic stop, while initially valid, became unlawful when it was prolonged beyond the time necessary to issue a warning citation. Defendant further argues that the consent he gave to search was invalid.

The magistrate judge concluded that the vehicle stop was not impermissibly prolonged, and the court agrees. Extending the length of a routine traffic stop by asking for and receiving consent to search does not run afoul of the Fourth Amendment. See Foreman, 369 F.3d at 781 (stating that a suspect in a traffic stop may be further detained with the individual's consent). Detective Morrison-Brown requested consent to search immediately upon issuing the warning citation, approximately three to five minutes after initiating the traffic stop. The traffic stop was hardly prolonged at all; further, defendant consented to the search after he was issued the warning citation. Defendant's first argument is therefore without merit.

Further, the magistrate judge concluded that defendant's argument that no valid consent to search was unpersuasive, and the court likewise agrees. Where consent to search is challenged, the court must determine based on the totality of the circumstances whether the consent was voluntary. Mendenhall, 446 U.S. at 557. In its analysis, the court may take into account the characteristics of the accused, including his age, maturity, education, intelligence, and experience, as well as the conditions under which the consent to search was given. Lattimore, 87 F.3d at 650. Here, both the

9

characteristics of the accused and the conditions under which consent was given show that defendant's consent was valid. Defendant is sixty-six years old, and has extensive experience with the criminal justice system, both as a former criminal defendant and as a frequent informant. Further, the conditions under which consent was given cannot be said to be coercive. Detective Morrison-Brown characterized her interactions with defendant as friendly and pleasant, and the stop itself was of very short duration, approximately three to five minutes. The court finds that the government has met its burden to show that under the totality of the circumstances, defendant's consent was knowing and voluntary.

Defendant further argues that even if he gave valid consent to search, he only consented to a search of his vehicle and not of his person, where the evidence was found. In support of this proposition, defendant relies on Detective Morrison-Brown's police report, which states that she received consent to search defendant's vehicle, but makes no mention of consent to search defendant's person. The magistrate judge concluded that it was highly likely that Detective Morrison-Brown received consent to search both the vehicle and defendant's person, as she testified that her notes were not necessarily a reflection of the exact extent of consent, and further that she would have asked for consent to search both defendant's vehicle and person as part of a routine traffic stop. Sergeant Daniels testified that standard NBPD procedure is to ask for consent to search both. However, even in the unlikely event that Detective Morrison-Brown received consent to search only the vehicle, the search of defendant's person would still be valid. Upon conducting the initial traffic stop, an officer may order the driver to exit the vehicle and does not violate the Fourth Amendment in doing so. Robinette, 519 U.S. at 38-39. Detective Morrison-Brown would have been well within her authority to order defendant out of the vehicle, and at that point would be justified

10

in conducting a frisk of defendant's person pursuant to Terry v. Ohio, 392 U.S. 1 (1968). Immediately prior to conducting the frisk, Detective Morrison-Brown informed defendant that she was frisking him for officer safety, which prompted defendant to admit his possession of the firearm. The court therefore concludes, as did the magistrate judge, that defendant's argument on this ground is without merit.

The court finds, as did the magistrate judge, that the traffic stop was not impermissibly prolonged and that defendant validly gave consent to search. Defendant's Fourth Amendment argument is therefore overruled.

2.  Suppression of statements

Defendant also argues pursuant to the Fifth Amendment for the suppression of certain statements made to Sergeant Dombrowsky after being placed under arrest and transported to the police station. It is undisputed that defendant was not given *Miranda* warnings prior to the conversation he had with Sergeant Dombrowsky, during which conversation the defendant stated that he "only had the gun for protection." Defendant argues that the statement was the result of a custodial interrogation and that because he was not given *Miranda* warnings, the statement must be suppressed. There is no doubt that defendant was in custody for *Miranda* purposes, and the government concedes as much. The government argues, however, that although defendant was in custody, he was not subject to interrogation and therefore *Miranda* warnings were not required.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In order to protect that right, when a suspect is subject to "custodial interrogation," he must be warned that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the

11

presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444 (1966). "Interrogation" for *Miranda* purposes is "either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The term "functional equivalent" is narrowly construed and is applied in only very limited circumstances. See United States v. Kimbrough, 477 F.3d 144, 147-50 (4th Cir. 2007). For example, statements by officers regarding evidence in their possession which are not designed to elicit an incriminating response do not constitute interrogation. United States v. Payne, 954 F.2d 199, 202 (4th Cir. 1992); see also United States v. Blake, 571 F.3d 331, 341-43 (4th Cir. 2009) (finding that police officer who taunted a juvenile who had invoked his right to counsel by showing him a charging document with "DEATH" as a possible sentence and then said "I bet you want to talk now" did not engage in the functional equivalent of interrogation).

The court finds that defendant was not subject to custodial interrogation at the time he offered his statement, and therefore, defendant's argument under the Fifth Amendment is overruled. It is clear from the record that Sergeant Dombrowsky did not expressly question defendant at the station. He explicitly told defendant that he did not want to talk about the events of the evening. Therefore it seems that defendant must be relying on the theory that Sergeant Dombrowsky's words or actions constitute the "functional equivalent" of express questioning sufficient to render the encounter an interrogation. Defendant's argument is unpersuasive.

The "functional equivalent" of express questioning is very narrowly construed and infrequently applied. See Kimbrough, 477 F.3d at 147-150. The only action by Sergeant Dombrowsky which could conceivably be construed as the "functional equivalent" of express questioning is his comment to defendant that defendant was "getting old and should stop messing

Case 4:10-cr-00021-FL Document 47 Filed 01/14/11 Page 12 of 14

around," to which defendant volunteered that he "only had the gun for protection" because he had been robbed in the past.

Particularly instructive for its comparable facts is the Fourth Circuit's decision in United States v. Payne. In that case, a police officer told a suspect that "[t]hey found a gun at your house," referring to police officers executing a search warrant. 954 F.2d at 201. The suspect responded that "I just had it for my protection." The Fourth Circuit held on those facts that the police officer's statement did not constitute interrogation for purposes of *Miranda*. Id. at 203. The Fourth Circuit found that the officer's statement was "rather innocuous" and that the defendant was "not subjected to compelling influences, psychological plots, or direct questioning." Id. Further, the officer's statement in Payne was "not one that sought or required a response," and that it could not say that the officer should have known that the statement was "reasonably likely to elicit an incriminating response." Id.

Here, Sergeant Dombrowsky's statement was less related to the charged conduct than the statement in Payne, and elicited the same response. Sergeant Dombrowsky characterized his statement as mere "friendly advice," and the court is of the opinion that the statement was "rather innocuous" like the statement by the officer in Payne. Defendant was not subjected to any compelling influences, psychological plots, or direct questioning. He specifically asked to speak to Sergeant Dombrowsky due to their extensive personal history which was consistently cooperative in nature. Sergeant Dombrowsky did not question defendant about the evening's events, and told him in advance that he was not going to do so. The court concludes, as did the Fourth Circuit in Payne, that Sergeant Dombrowsky's statement does not rise to the level of interrogation for purposes

of *Miranda*. Therefore defendant was not required to be advised of his *Miranda* rights, and defendant's argument under the Fifth Amendment is without merit.

## CONCLUSION

For the foregoing reasons, and upon finding no clear error with the recommendations of the magistrate judge, the court hereby ADOPTS the M&R (DE # 39) in full. Defendant's motion to suppress (DE #32) is accordingly DENIED.

SO ORDERED, this the 14th day of January, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge